IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2025

## STATE OF TENNESSEE v. JULLION FAIN CULPS

**Appeal from the Circuit Court for Madison County**
**No. 22-553    Donald H. Allen, Judge**

_____

## No. W2024-01129-CCA-R3-CD

_____

The Defendant, Jullion Fain Culps, appeals from the trial court's denial of alternative sentencing on his effective nine-year sentence. The Defendant argues that the trial court abused its discretion by not allowing the Defendant to serve his sentence on probation, given his age, employment status, and his desire to care for his child. The State asserts that the trial court acted within its discretion by imposing a sentence of confinement. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TOM GREENHOLTZ, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Jullion Fain Culps.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

On January 13, 2022, officers from the Jackson Police Department stopped the Defendant for driving a vehicle with an expired tag. Officer Zachery Cobb averred by affidavit that, during the stop, the Defendant appeared nervous and kept his right hand by his side. When asked to step out of the vehicle and whether he had any weapons on his person, the Defendant answered that he had a gun in his right pants pocket and further

stated that he was a convicted felon. Officer Cobb removed a black and silver Taurus G2C from the Defendant's pocket and confirmed the Defendant's status as a convicted felon.

On July 5, 2022, a Madison County grand jury returned a two-count indictment. Count 1 charged the Defendant with unlawful possession of a firearm after having been convicted of a felony involving the use of violence, the attempted use of violence, or the use of a deadly weapon. *See* Tenn. Code Ann. § 39-17-1307(b)(1)(A). Count 2 charged the Defendant with possession of a handgun after having been convicted of a felony. *See id*. -1307(c)(1). In April 2024, the Defendant pled guilty to both charges, which merged, and agreed to a nine-year sentence with a release eligibility rate of eighty-five percent and that the trial court would determine the manner of service at a later sentencing hearing.

The trial court held a sentencing hearing on July 22, 2024. The State introduced a presentence investigation report, which was admitted into evidence. The report indicated that the Defendant had previous convictions from 2016 for aggravated burglary, theft of property valued at $500 to $1,000, and two counts of assault. The report reflected that the Defendant had tested positive for marijuana three times in 2017 while under supervision and had previously had his probation and parole revoked. The report also listed the Defendant as a confirmed member of the Bloods, a criminal street gang, and the validated risk and needs assessment placed his overall risk level as moderate.

The Defendant testified that, at the time of the hearing, he was twenty-seven years old and had a five-year-old child. While he had been paying child support, he had an arrearage of "[n]o more than $1000." At the time of his arrest, he was employed and stated he could return to his employment if he was released on probation. He stated that the longest he had held a job was two years and affirmed that he had never successfully completed probation. He acknowledged that, back in 2016, he had been charged with aggravated assault and, while on bond, had picked up an aggravated burglary charge. He then pled guilty to simple assault and aggravated burglary and, while on probation for those convictions, absconded, and had his probation revoked. He was eventually paroled on his aggravated burglary conviction, was arrested for the instant offenses, and had his parole revoked in March 2022.

The Defendant continued that he understood that it was "a tough position to be in to be a felon and be caught with a gun." When asked why the Defendant "had the gun on [him] when the stakes [were] so high," he responded, "Just a mistake. Just a mistake." The Defendant then clarified that he was only involved with the Bloods gang when he was young and that he was associated with the gang again while he was in the Tennessee

- 2 -

Department of Correction ("TDOC") because of the people he was "hanging around." The Defendant requested that the trial court grant him probation.

The trial court stated that it had considered the principles of sentencing and the arguments made by counsel as to alternative sentencing. Specifically, the trial court noted that it considered the nature and characteristics of the criminal conduct, noting the "serious" matter of a convicted felon possessing a firearm after having been previously convicted of a violent felony. As to the statistical information provided by the Administrative Office of the Courts on sentencing practices for similar offenses, the trial court noted the legislature's concern over individuals with prior violent felony convictions being in possession of firearms. The trial court considered the Defendant's statement that he had made a mistake by possessing a firearm but found that this was "not a mistake" but "a decision." The trial court continued that the Defendant made this decision knowing he was on parole for aggravated burglary, knowing he had been in prison previously, and knowing he was a confirmed gang member. The trial court further noted its consideration of the evidence that was presented at the hearing, the evidence contained in the presentence investigative report, the evidence relating to mitigating or enhancement factors, and the validated risk and needs assessment contained in the presentence investigative report.

Additionally, the trial court considered the Defendant's potential for rehabilitation; his criminal history, including the violent nature of his prior convictions for assault and aggravated burglary; his mental and physical health, which the trial court described as normal given his low needs in mental health on the validated risk and needs assessment; his social history as a member of the Bloods; and his supervisory history on probation and parole. It also specifically found that the interests of society in being protected from the future criminal conduct of the Defendant were great, that ordering confinement would serve as an effective deterrent to other offenders, and that measures less restrictive than confinement had previously been applied to the Defendant without success. The trial court continued to emphasize throughout its findings that the Defendant had never successfully completed probation and had violated the terms of conditional release multiple times.[1]

The trial court acknowledged that the Defendant had a five-year-old child. However, it stated "if [the Defendant] want[ed] to use that as a reason to straighten [his] life out, he should have done that five years ago when the child was born." The trial court also noted that the child was living with her mother at the time the presentence investigative report was conducted. As for mitigating factors, the trial court noted that the Defendant

---

[1] On two occasions during the hearing, the trial court noted that the Defendant had originally posted bond in this case but did not appear for his trial date on July 19, 2023, and the subsequent capias issued for his failure to appear was the reason the Defendant was in jail at the time of the hearing.

accepted responsibility by pleading guilty, but it recognized that the agreed term of the sentence was "lower range." The trial court also considered the Defendant's employment status, stating it would "give him some mitigation" based on his "decent work history."

The trial court found that the Defendant was a Range I, standard offender and reiterated that the agreed upon sentence was for a nine-year sentence at eighty-five percent for the Class B felony offense. The trial court then ordered the Defendant to serve his nine-year sentence in TDOC. This timely appeal followed.

## II.    ANALYSIS

The Defendant's only argument on appeal is that the trial court should have allowed him to serve his sentence on probation on account of his age and because he was "gainfully employed and raising a child." The State counters that the trial court acted consistently with the purposes and principles of the Sentencing Act and therefore did not abuse its discretion by ordering the sentence to be served in confinement.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," a punishment sufficient "to prevent crime and promote respect for the law," and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]" Tenn. Code Ann. § 40-35-102(1), (3), (5); *see Carter*, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts ("AOC") as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

A trial court should consider the following when determining a defendant's suitability for alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

Relative specifically to probation, a defendant who receives a sentence of ten years or less, except for certain specified offenses, is eligible for probation. Tenn. Code Ann. § 40-35-303(a). While the trial court is required to automatically consider probation as a sentencing option, *see* Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, *see State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). "[T]he burden of establishing suitability for probation rests with the defendant[,]" including the defendant's showing that probation will serve the ends of justice and the best interests of the public and the defendant. *Carter*, 254 S.W.3d at 347

(quoting Tenn. Code Ann. § 40-35-303(b), *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Additionally, among the factors applicable to probation consideration are: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

Here, the Defendant's agreed upon sentence of nine years was within the appropriate range for a Range I, standard offender convicted of a Class B felony. *See* Tenn. Code Ann. § 40-35-112(a)(2). The trial court articulated on the record its consideration of all eight factors provided in Tennessee Code Annotated section 40-35-210(b). It also found that society's interest in being protected from the Defendant's future criminal conduct was great, that confinement would serve as an effective deterrent to others, and that measures less restrictive than confinement had been applied to the Defendant without success. Therefore, the trial court's sentencing decision complied with the purposes and principles set forth in the Sentencing Act. *See* Tenn. Code Ann. § 40-35-102, -103(1), -210(b).

As to the Defendant's argument that he deserved alternative sentencing on account of his age, employment status, and desire to raise a child, the record reflects that the trial court considered these points in rendering its decision and was not persuaded by these arguments. Additionally, while the Defendant was eligible for probation on his nine-year sentence, he was not a favorable candidate for alternative sentencing as a Range I offender convicted of a Class B felony. *See* Tenn. Code Ann. § 40-35-102(6)(A). Moreover, the trial court considered the Defendant's criminal history for prior violent offenses, his repeated failures to comply with the terms of conditional release, his normal mental and physical health, the "serious" nature of a felon possessing a weapon after having been convicted of a crime of violence, and the deterrence value of confinement. *See Trent*, 533 S.W.3d at 291; *id.* § 40-35-102(5) ("convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration."). These considerations are supported by the record. As such, the Defendant has failed to show his suitability for probation. *See Davis*, 940 S.W.2d at 559; *Carter*, 254 S.W.3d at 347. We conclude that the trial court did not abuse its discretion in ordering the Defendant to serve his nine-year sentence in TDOC. He is not entitled to relief.

## III.  CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.


 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE